508 P.2d 340

Albert W. DENN and V. Ruth Denn,
husband and wife, Appellants,

v.

SOUTHERN PERU COPPER CORPORA-
TION, a corporation, Appellee.

No. 2 CA–CIV 1242.

Court of Appeals of Arizona,
Division 2.

April 11, 1973.

Rehearing Denied May 8, 1973.
Review Denied June 5, 1973.

Price, Tinney, Lindberg & Gianas by
John Price, Tucson, for appellants.

Chandler, Tullar, Udall & Richmond by
D. B. Udall and Jack Redhair, Tucson, for
appellee.

HATHAWAY, Chief Judge.

This appeal is from a judgment dismiss-
ing appellants' complaint against appellee,
Southern Peru Copper Corporation on the
ground that appellee was a foreign corpo-
ration not doing business in the State of
Arizona to the extent that it had submitted
itself to the jurisdiction of the courts of
Arizona. The jurisdiction question was
decided on the basis of depositions, affida-
vits and stipulations.

The appellants argue that the superior
court erred in dismissing the complaint be-
cause Southern Peru Copper Corporation
was doing business in the State of Arizona
to the extent that it had subjected itself to
the jurisdiction of the courts of Arizona
under Rule 4(e)(2), 16 A.R.S. The rule is
intended to liberalize service of process in
Arizona and to give Arizona residents the
maximum privileges permitted by the Con-
stitution of the United States in view of

**454.**

numerous United States Supreme Court decisions.[1] Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732 (1966); State Bar Committee Note following Rule 4(e)(1). Although the requisites for *in personam* jurisdiction have been steadily diminished, nevertheless ". . . due process requires . . . that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. at 316, 66 S.Ct. at 158; 90 L.Ed. at 102.

In April, 1968, appellant Albert W. Denn, entered into an employment contract through the mails with Southern Peru, a copper mining corporation, under which he was to move to Toquepala, Peru, and perform services as a mechanical supervisor. While in Peru, appellant was injured during the course of his employment. The instant lawsuit was commenced in Pima County Superior Court against two defendants, including appellee, seeking damages for personal injuries sustained by Denn as a result of the alleged negligent maintenance of a roadway in Peru.

Appellee, a corporation mining copper in Peru with a home office in New York, had hired Mr. John S. Splane, an independent contractor, in Tucson, Arizona, to conduct a program to recruit employees for its mine in Peru. Mr. Splane was retained on a monthly fee of $400 plus $100 for each recruited employee that Southern Peru hired. From 1956 through 1970, appellee hired approximately two hundred employees through the efforts of Splane. Splane placed employment advertisements in local newspapers after being authorized by appellee to do so and was reimbursed by appellee. In a pamphlet handed all applicants by Southern Peru, Mr. Splane's office was listed as the employment office for the southwestern region of Southern Peru Company. When applicants came to Splane's office, he screened them and forwarded all papers and applications to appellee. Appellee would then determine whether the applicant was qualified for a particular opening and would either reject or make him an offer of employment. If the applicant was hired, Splane would assist the employee in obtaining needed medical examinations, passports, visas, licenses, transportation and would render any other assistance which might be needed. Any expenses incurred by Splane in rendering such assistance would be paid for by the appellee. In most situations, Splane was involved in all transactions in preparation for the employee going to Peru.

The contract between Southern Peru and Splane merely stated the amount of compensation Mr. Splane would receive for his recruiting efforts. Splane consulted and recruited for other clients in addition to appellee on a minimal basis. His services for appellee were limited to recruiting, as the final decision regarding employment of each applicant was entirely appellee's. Appellant Denn was routinely hired through Splane's office.

We are called upon to determine whether the appellee's activities within the State of Arizona are sufficient to subject it to *in personam* jurisdiction although the cause of action arose outside of the State of Arizona. To subject a defendant to the jurisdiction of the forum state, its activities within the forum must be of sufficient magnitude as to constitute "presence" therein. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Deere & Co. v. Superior Ct., 18 Ariz.App. 491, 503 P.2d 967 (1972).

1. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957); *cf.* Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

Appellee argues that it was acting through an independent contractor and therefore could not be "present". Although Mr. Splane may technically have been an independent contractor, we believe that the distinction between agent and independent contractor is immaterial to the subject problem. Thew Shovel Co. v. Superior Ct., 35 Cal.App.2d 183, 95 P.2d 149 (1939); Moore Mach. Co. v. Stewart-Warner Corp., 27 F.Supp. 526 (N.D.Calif. 1939). A systematic and continuous course of conduct within the State of Arizona constitutes "doing business" for *in personam* jurisdiction. Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116 (1967); Frummer v. Hilton Hotels Inter., Inc., 19 N.Y. 2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967).

Appellee had been systematically, for a period of ten years, recruiting and hiring people through advertisements and through an extensive recruiting program in Arizona. It spent substantial amounts of money in recruiting, transporting and accommodating each employee processed in Tucson. These expenditures for transportation and recruiting clearly evidence the importance, need and dependence of Southern Peru on its Tucson program. The following test has been used in determining whether a corporation is sufficiently "present" to be subject to jurisdiction:

". . . a foreign corporation is doing business . . . 'in the traditional sense' when its . . . representative provides services beyond 'mere solicitation' and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services. Gelfand v. Tanner Motor Tours, Ltd., supra, 385 P. 2d at page 121.

The substantial number of people recruited was apparently necessary to conduct the mining operations in Peru. The mining company itself considered the Tucson office as its own recruiting office as indicated by its listing in the employment manual handed to each employee. The number of people hired by Southern Peru would indicate that Tucson was a major source of mining talent for the company and had Mr. Splane not been retained, it most likely would have been necessary for Southern Peru to send someone to Tucson to perform Splane's functions. Without competent miners and supporting employees, a mining company obviously cannot function. The State of Arizona and its vast mining industry clearly provides an attractive recruiting ground for mining personnel. We believe that appellee's recruiting activities in this state was of great importance to its operation.

Basic fairness compels the conclusion that the mining company's "presence" was sufficient to subject it to the jurisdiction of the courts of Arizona, when the magnitude and importance of its recruiting program is considered. It is only reasonable that the courts of the state be open to its residents who have been recruited to, and been injured at, a distant place. Otherwise justice would for all practical purposes be unavailable to an injured party.

Southern Peru argues that the service by registered mail in its New York office was insufficieint, in that the complaint failed to allege events occurring in this state out of which the appellants' claim for relief arose. In view of our conclusion that Southern Peru was "doing business" in the State of Arizona we find that service was sufficient. A.R.C.P. Rule 4(e)(2).

For the foregoing reason, we find that dismissal was improper.

Reversed.

KRUCKER and HOWARD, JJ., concur.